**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Munson, | No. CV-23-01253-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 9), the Commissioner's answering brief (Doc. 15), and Plaintiff's reply (Doc. 16), as well as the Administrative Record (Docs. 7-8, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.    Procedural History

Plaintiff filed an application for benefits on July 11, 2020, alleging disability beginning on April 24, 2020. (AR at 28.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On March 30, 2022, following a video hearing, the ALJ issued an unfavorable decision. (*Id.* at 28-36.) The Appeals Council later denied review. (*Id.* at 1-3.)

…

…

II.    <u>The Sequential Evaluation Process and Judicial Review</u>

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process.  20 C.F.R. § 416.920(a).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity.   20 C.F.R. § 416.920(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  *Id*. § 416.920(a)(4)(ii).  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  *Id*. § 416.920(a)(4)(iii).  If so, the claimant is disabled.  *Id.*  If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work.  *Id*. § 416.920(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.  *Id*. § 416.920(a)(4)(v).  If not, the claimant is disabled.  *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (internal quotations omitted).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).  In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

1  III.    The ALJ's Decision

2          The ALJ concluded that Plaintiff had not engaged in substantial, gainful work

3  activity since the alleged onset date and that Plaintiff had the following severe impairments:

4  "depressive disorder/bipolar disorder; generalized anxiety disorder."  (AR at 30.)[1]  Next,

5  the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.

6  (*Id*. at 31-32.)  Next, the ALJ calculated Plaintiff's RFC as follows:

7              [T]he claimant has the residual functional capacity to perform a full range of
8              work at all exertional levels but with the following nonexertional limitations:
9              the claimant is able to perform simple, routine and repetitive tasks but not at
               a production rate pace (such as in assembly line work); interact with
10             supervisors frequently, with coworkers occasionally, and with the public
               occasionally; and make simple work-related decisions.
11

12 (*Id*. at 32.)

13         As part of this RFC determination, the ALJ evaluated Plaintiff's symptom

14 testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and

15 limiting effects of [her] symptoms are not entirely consistent with the medical evidence

16 and other evidence in the record for the reasons explained in this decision."  (*Id*. at 33.)

17         The ALJ also evaluated opinion evidence from various medical sources, concluding

18 as follows: (1) S. Fair, Ph.D., state agency psychological consultant ("less persuasive");

19 (2) J. Patrick Peterson, Ph.D., J.D., state agency psychological consultant ("less

20 persuasive"); (3) M. David McGady, Psy.D., consultative examiner ("not persuasive"); (4)

21 Robyn Rumple, MSW, LCSW, mental health provider ("not persuasive"); (5) Jon

22 Martinson, PA-C, medical provider ("not persuasive"); and (6) E. Wavak, M.D., state

23 agency medical consultant ("less persuasive").  (*Id*. at 33-34.)[2]

24         Based on the testimony of a vocational expert ("VE"), the ALJ concluded that

25 _____

26 [1]     The ALJ also determined that Plaintiff had the non-severe impairments of plantar
   fasciitis and obesity.  (AR at 31.)

27 [2]     Although the ALJ's decision does not identify these medical sources by name, their
   identifying information can be found in the cross-referenced assessment forms.  (AR at 89-
28 93 [Fair]; *id*. at 94-108 [Peterson]; *id*. at 528-37 [McGady]; *id*. at 541, 544, 605, 608, 994
   [Rumple]; *id*. at 1112-18, 1143-49 [Martinson]; *id*. at 88-89 [Wavak].)

1   although Plaintiff was incapable of performing her past relevant work (which consisted of

2   work as a real estate clerk, caterer helper, human resource clerk, and manager-retail store),

3   she was capable of performing three other jobs that exist in significant numbers in the

4   national economy: (1) mail room clerk, (2) routing clerk, and (3) office helper.  (*Id.* at 34-

5   36.)  Thus, the ALJ concluded that Plaintiff is not disabled.  (*Id.* at 36.)

6   IV.   Discussion

7          Plaintiff raises two issues: (1) whether the ALJ "erred when evaluating [her]

8   testimony"; and (2) whether the ALJ "improperly weighed medical opinion evidence."

9   (Doc. 9 at 1.)  As a remedy, Plaintiff seeks a remand "for the payment of benefits, or

10  alternatively, remanding the matter for a new administrative hearing."  (*Id.* at 23.)

11         A.   **Evaluation Of Plaintiff's Testimony**

12              1.   The Parties' Arguments

13         Plaintiff argues that although the ALJ accepted, at step two of the disability analysis,

14  that her anxiety disorder qualified as a severe impairment, "the ALJ essentially ignored

15  this impairment in terms of how it impacted [her] capacity to work due to panic attacks,

16  and failed to evaluate [her] testimony regarding panic attacks."  (Doc. 9 at 4-5.)  Plaintiff

17  continues: "Despite the[] established directives in the Ninth Circuit [concerning the

18  evaluation of symptom testimony], the ALJ disregarded [her] probative and dispositive

19  testimony without explanation in error.  The ALJ neither rejected [her] testimony regarding

20  panic attacks that demonstrated disability nor explained what evidence contradicted [her]

21  statements as required."  (*Id.* at 5-6.)  Plaintiff also notes that her panic attacks were

22  referenced in her function reports and during lay witness testimony.  (*Id.* at 6-9.)  Plaintiff

23  contends that "the ALJ's unwillingness to evaluate this work preclusive testimony" thus

24  "constituted error in two respects.  First, the ALJ erred in ignoring the testimony of Plaintiff

25  and the lay witnesses, which was the essential testimony [on which she] relied to establish

26  disability.  Second, the ALJ provided no reasons, let alone germane reasons to reject the

27  lay witness testimony, and the failure to consider and evaluate this testimony was harmful."

28  (*Id.* at 10.)  Plaintiff also argues that none of the ALJ's proffered reasons for the adverse-

credibility finding "undermine the testimony regarding panic attacks, and their impact on [her] inability to work." (*Id.* at 12.) Plaintiff adds that the "ALJ improperly conflated [her] minimal activities and limited presentation in examinations as the ability to sustain work on a regular, continued, and full-time basis." (*Id.* at 13.) Plaintiff also contends that the ALJ erred by failing to "acknowledg[e] her actual statements" in the portion of the order addressing her symptom testimony. (*Id.* at 14.) Finally, Plaintiff faults the ALJ for not incorporating her panic attacks into the RFC (*id.* at 15-16) and summarizes some of the medical and opinion evidence bearing on her panic attacks (*id.* at 16-18).

In response, the Commissioner argues that the ALJ permissibly discounted Plaintiff's symptom testimony for "multiple valid reasons," which the Commissioner identifies as (1) inconsistency with the objective medical evidence and (2) inconsistency with Plaintiff's activities of daily living. (Doc. 15 at 3-5.) The Commissioner also argues that ALJ did, in fact, provide valid reasons for discounting Plaintiff's testimony concerning her panic attacks. (*Id.* at 5-7.) Finally, as for the lay witness testimony, the Commissioner argues that it is an "open question" under the new regulations whether ALJs are required to provide reasons for rejecting such testimony but, regardless, any error was harmless because the lay witness testimony simply mirrored Plaintiff's symptom testimony, which the ALJ permissibly discredited. (*Id.* at 7-8.)

In reply, Plaintiff reiterates the arguments set forth in her opening brief. (Doc. 16 at 1-2.)

### 2. Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony. Because Plaintiff raises an array of arguments that seem to implicate several different legal doctrines, the Court will separate those arguments for purposes of analytical clarity.

#### a. **Overall Credibility Assessment**

Although most of Plaintiff's arguments address the ALJ's evaluation of one particular symptom—her panic attacks—Plaintiff also seems to contend that the ALJ erred

by discounting the overall credibility of her symptom testimony. As explained below, the Court disagrees.

Under Ninth Circuit law, an ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (citation omitted).

Here, the ALJ identified two reasons for discounting Plaintiff's symptom testimony. (AR at 33.) The first was inconsistency with the objective medical evidence. (*Id.*) More specifically, the ALJ explained that although Plaintiff testified that "she had growing anxiety and trouble working with people, particularly larger groups," the following medical records were inconsistent with that claim: (1) medical records showing that Plaintiff "was cooperative during several examinations"; (2) medical records showing that Plaintiff "maintained normal speech during multiple appointments"; (3) the report of the consultative examiner, who observed that Plaintiff "reported a good mood, and had a euthymic affect"; and (4) the records from "multiple examinations" that "noted a normal mood and affect." (*Id.*) Separately, the ALJ explained that although Plaintiff "also reported she is unable to think clearly," that claim was undermined by medical records from "numerous examinations" showing that Plaintiff "had intact thought process," "normal attention and concentration," and "fair or better attention." (*Id.*) The ALJ's second reason for the adverse credibility finding was that Plaintiff's testimony was inconsistent with her activities of daily living. (*Id.*) More specifically, the ALJ stated that Plaintiff's testimony was inconsistent with her acknowledged ability "to manage her finances" and "prepare simple meals for herself." (*Id.*) In a related vein, the ALJ noted

1    that although Plaintiff testified that "she has difficulty with shopping due to anxiety,"

2    Plaintiff admitted during a psychological examination that "she prepares her own simple

3    meals and is able to manage her medical care." (*Id.* at 31-32, citing *id.* at 530.)

4         The Court finds no harmful error in this analysis.  First, it was permissible for the

5    ALJ to discount Plaintiff's symptom testimony on the ground that it was inconsistent with

6    the objective medical evidence.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

7    1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for

8    rejecting the claimant's subjective testimony.") (citation omitted).  Although this may not

9    serve as an ALJ's sole reason for discounting a claimant's symptom testimony, it is a

10   permissible consideration when (as here) it is coupled with other grounds for an adverse

11   credibility finding.  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like

12   Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ

13   from using inconsistent objective medical evidence in the record to discount subjective

14   symptom testimony.  That is a misreading of [Ninth Circuit law].  When objective medical

15   evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ

16   may indeed weigh it as undercutting such testimony.  We have upheld ALJ decisions that

17   do just that in many cases.") (citations omitted); *Rollins v. Massanari*, 261 F.3d 853, 857

18   (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground

19   that it is not fully corroborated by objective medical evidence, the medical evidence is still

20   a relevant factor in determining the severity of the claimant's pain and its disabling

21   effects.").

22        Although terse and less than persuasive in some respects,[3] the ALJ's finding of

---

23   [3]     In the Court's view, the less-persuasive aspect of the ALJ's analysis was the

24   determination that Plaintiff's claims of growing anxiety and trouble working with people
     were inconsistent with the medical records showing that Plaintiff was cooperative and

25   pleasant during many medical appointments and during the consultative examination.
     During the hearing, Plaintiff testified that although her anxiety did not prevent her from

26   getting along with her boss on an individual level, her problems arose with "the people
     coming in or maybe coworkers," which Plaintiff likened to "the constant . . . Whac-A-

27   Mole." (AR at 58.)  Elsewhere, Plaintiff reiterated that working with groups of people
     caused her to suffer anxiety and panic attacks: "The number one thing was the people. . . .

28   [M]y last store was 300 people a day.  I worked eight- to ten-hour shifts and the #1 thing
     was people that really stressed me out, still do." (*Id.* at 53.)  The ALJ did not explain why
     this testimony was inconsistent with the medical records showing that Plaintiff functioned

inconsistency with the objective medical evidence was, in the final analysis, supported by substantial evidence.  During the hearing, the ALJ asked Plaintiff if she had experienced "any difficulties with concentration or paying attention or remaining focused."  (AR at 71.)  In response, Plaintiff testified that her concentration problems prevent her from "go[ing] on the computer anymore," being "able to read a book in years," or being "able to watch a movie in a long time" and also cause her to experience "[r]acing thoughts . . . constantly."  (*Id.* at 71-72.)  However, as the ALJ noted, medical providers repeatedly described Plaintiff as having an intact thought process and displaying normal attention and concentration.  (*See, e.g., id.* at 583 [May 11, 2020 treatment note, describing thought process as "intact," judgment as "good," and insight as "good"]; *id.* at 589 [August 13, 2020 treatment note, describing thought process as "Appropriate, Logical, intact, Relevant, No flight of ideas," thought content as normal, and insight as "Objectively intact"]; *id.* at 946-47 [May 19, 2021 treatment note, describing thought process as "intact," judgment as "good," insight as "good," and attention as "good"]; *id.* at 809 [June 7, 2021 mini-mental status exam, resulting in all normal findings as to cognition and thought processes].)  It was rational for the ALJ to construe these pieces of objective medical evidence as inconsistent with Plaintiff's testimony that she experiences constant racing thoughts and severe concentration and focus problems,[4] and "[w]hen evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).  *See also Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

The ALJ's other reason for discrediting Plaintiff's symptom testimony was that it

---

well in the one-on-one environment of medical appointments and consultative examinations.

[4]     Notably, Plaintiff did not testify that she only experiences these concentration and focus problems when in group settings or during panic attacks.  Thus, unlike as discussed in the previous footnote, it was rational for the ALJ to construe the cited medical records as inconsistent with her testimony.

was inconsistent with Plaintiff's activities of daily living.  This is also a permissible basis for an adverse credibility finding under Ninth Circuit law.  *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms.  While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . .").

This finding of inconsistency was also supported by substantial evidence.  In addition to testifying to the severe concentration problems and racing thoughts described above, Plaintiff also testified that she had not "been in a grocery store . . . for at least five years," that she is no longer able to "cook" and "basically live[s] on oatmeal and cheese and crackers and whatever [her] husband decides to . . . brin[g] . . . home," and that she doesn't manage money or pay bills in any significant way, as all of her bills are paid automatically and her husband provides her with money to cover those bills.  (AR at 66-67.)  However, during a psychological examination in October 2020, Plaintiff stated "that she prepares her own meals, provided they are simple and no require a great deal of time to do so," and also "reported being able to pay her own bills and manage her financial resources independently."  (*Id.* at 530.)  It was rational for the ALJ to make a finding of inconsistency under these circumstances.  *Ghanim*, 763 F.3d at 1163; *Thomas*, 278 F.3d at 954.

Finally, there is no merit to Plaintiff's contention that the ALJ "improperly conflated

[her] minimal activities . . . as the ability to sustain work on a regular, continued, and full-time basis."  (Doc. 9 at 13.)   The Ninth Circuit has recognized that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."  *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014).  This makes sense—a factfinder is entitled to discount the credibility of a witness who has been shown to have testified in a false or exaggerated manner even if the impeaching daily activities would not, alone, compel a finding of non-disability.  *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . .").  *See generally* 9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").

b.   **Failure To Specifically Discredit Panic Attack Testimony Or Include Panic Attack-Related Restrictions In The RFC**

Plaintiff also seems to contend that even if the ALJ permissibly discounted her testimony as to certain symptoms, the ALJ was still required to analyze her testimony as to every other alleged symptom (including her testimony regarding panic attacks) and provide specific, clear and convincing reasons for discounting the credibility of that testimony.  On this point, Plaintiff is mistaken.  *Young v. Saul*, 845 F. App'x 518, 519-20 (9th Cir. 2021) ("As an initial matter, we reject Young's argument that, by failing expressly to mention Young's assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it. . . .  The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony, such as the need to take off weeks at a time from work.") (citing

*Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020)); *Dorsey v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6058505, *9 n.4 (D. Ariz. 2023) ("To the extent Plaintiff's position is that the ALJ needed to go through each one of his claimed symptoms and provide specific, clear and convincing reasons for rejecting his testimony regarding that symptom, any such argument lacks merit.  Plaintiff cites no case endorsing such a rule, which would be inconsistent with the principle that an ALJ may utilize 'ordinary techniques of credibility evaluation' when evaluating a claimant's symptom testimony.  A determination that a witness has testified untruthfully on one topic ordinarily entitles a factfinder to disregard other portions of that witness's testimony.") (citations omitted).

Nor is there any merit to Plaintiff's seeming argument that the ALJ's failure to include any panic attack-related limitations in the RFC was inconsistent with the ALJ's step-two determination that Plaintiff's anxiety disorder qualified as a "severe" impairment. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims.  It is not meant to identify the impairments that should be taken into account when determining the RFC.") (citation omitted).

### c.   **Lay Testimony**

Plaintiff's final argument is that the ALJ erred by failing to acknowledge—let alone provide germane reasons for discrediting—the lay witness testimony regarding her panic attacks.  This argument is unavailing.  As the Commissioner correctly notes, even assuming the "germane reasons" requirement remains intact under the new SSA regulations, any error here was harmless. *Wallace v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6389370, *10-11 (D. Ariz. 2023) ("Plaintiff is not entitled to reversal based on his arguments regarding the lay witness statements.  As an initial matter, the Court notes that the Ninth Circuit has not definitively resolved whether ALJs must continue, following the issuance of the new SSA regulations in 2017, to provide reasons for rejecting lay-witness statements. Lower courts have reached conflicting decisions on that issue.  Nevertheless, even assuming the reasoning requirement remains intact, the Ninth Circuit has recognized that the failure to provide such reasoning is harmless where (1) the ALJ provided legally sufficient reasons

1   for rejecting the claimant's symptom testimony and (2) the lay witness did not describe
2   any limitations beyond those identified by the claimant.") (citations omitted).

3       B.   **Opinion Evidence**

4       Plaintiff's final argument is that the ALJ erred when evaluating the opinions of the
5   consultative examiner, Dr. McGady.  (Doc. 9 at 18-23.)[5]

6           1.   Standard Of Review

7       In January 2017, the SSA amended the regulations concerning the evaluation of
8   medical opinion evidence.  *See Revisions to Rules Regarding Evaluation of Medical*
9   *Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  The new regulations apply to applications
10  filed on or after March 27, 2017, and are therefore applicable here.  The new regulations
11  provide in relevant part as follows:

12      We will not defer or give any specific evidentiary weight, including
13      controlling weight, to any medical opinion(s) or prior administrative medical
        finding(s), including those from your medical sources. . . .  The most
14      important factors we consider when we evaluate the persuasiveness of
15      medical opinions and prior administrative medical findings are supportability
        . . . and consistency . . . .
16

17  20 C.F.R. § 416.920c(a).  Regarding the "supportability" factor, the new regulations
18  explain that the "more relevant the objective medical evidence and supporting explanations
19  presented by a medical source are to support his or her medical opinion(s), . . . the more
20  persuasive the medical opinions . . . will be."  *Id.* § 404.1520c(c)(1).  Regarding the
21  "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence
22  from other medical sources and nonmedical sources in the claim, the more persuasive the
23  medical opinion(s) . . . will be."  *Id.* § 404.1520c(c)(2).[6]

24      The Ninth Circuit has confirmed that the "recent changes to the Social Security

25  _____

26  [5]   Although the ALJ evaluated the opinions of six medical sources (AR at 32-33),
    Plaintiff limits her challenge to the ALJ's evaluation of Dr. McGady's opinions.

27  [6]   Other factors that may be considered by the ALJ in addition to supportability and
    consistency include the provider's relationship with the claimant, the length of the
28  treatment relationship, the frequency of examinations, the purpose and extent of the
    treatment relationship, and the specialization of the provider.  *Id.* § 416.920c(c).

- 12 -

Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. . . . [T]he ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.* (citation omitted).

## 2.    Dr. McGady's Opinions

Dr. McGady performed a consultative examination of Plaintiff on October 13, 2020 and issued a report on October 24, 2020. (AR at 528-35.) In the initial portions of the report, Dr. McGady summarized Plaintiff's allegations, activities of daily living, and history and provided various observations regarding Plaintiff's demeanor and affect. (*Id.* at 528-32.) Next, Dr. McGady summarized the results of the mini-mental status exam he administered, concluding that Plaintiff "received a score of 30/30 which is in the normal range." (*Id.* at 532.) Next, Dr. McGady diagnosed Plaintiff with "unspecified bipolar and related disorder" and "unspecified anxiety disorder." (*Id.* at 433.) Next, Dr. McGady addressed Plaintiff's "prognosis," opining that although she "does appear to genuinely experience mood disturbances and pathological levels of anxiety," her "mental symptoms

are adequately treated at the current time and do not appear to pose any significant impairments in her daily functioning or ability to maintain employment. As such, her prognosis is considered good." (*Id.* at 533-34.) Finally, Dr. McGady provided a summary of his opinions and observations. (*Id.* at 534.)

Dr. McGady also completed a two-page form entitled "Psychological/Psychiatric Medical Source Statement." (*Id.* at 536-37.) First, Dr. McGady provided the following summary of Plaintiff's "understanding and memory" abilities (*i.e.,* "ability to understand simple instructions, detained instructions, and work-like procedures"):

> [Plaintiff] is able to understand and learn terms, instructions, and procedures, follow a one-to two step oral/written instructions to carry out a task; describe work activity to someone else, ask and answer questions and providing information, recognizing a mistake and correcting it, identifying and solving problems, sequencing one-to-two step activities, and using reason and judgment [Plaintiff] is able to understand and remember one-to two step directions. [Plaintiff] had no problems in filling out forms or attending to CE/other medical appointments independently. There is no history of work failure due to inability to remember or understand. During the evaluation [Plaintiff] was able to sustain concentration, pace and persistence for simple tasks on a sustained basis. As the complexity of tasks increase, [Plaintiff] may have difficulties.

(*Id.* at 536.)

Second, Dr. McGady provided the following summary of Plaintiff's "sustained concentration and persistence" abilities (*i.e.,* "ability to carry out simple instructions, maintain[] attention and concentration, and maintain regular attendance"):

> During the evaluation, [Plaintiff] was able to sustain concentration, pace and persistence for simple tasks on a sustained basis. Such as focusing on the topic of discussion, being easily redirected, changing topics of conversation. During testing she was able to switch tasks and remember instructions. [Plaintiff] is able to understand and learn terms, instructions, and procedures, follow a one-to two step oral/written instructions to carry out a task; ask and answer questions and providing information, recognizing a mistake and correcting it, identifying and solving problems, sequencing one-to-two step

activities, and using reason and judgment to make work-related decisions.

(*Id.* at 536-37.)

Third, Dr. McGady provided the following summary of Plaintiff's "social interaction" abilities (*i.e.,* "ability to get along with co-workers, respond appropriately to supervision, maintain, socially appropriate behavior, and adhere to basic standards of neatness"):

> During the evaluation [Plaintiff] was able to perform well on activities where interpersonal contact was relatively brief (2 hour).  [Plaintiff] did not appear to display any overt difficulties during interactions with office staff or this psychologist.  [Plaintiff] described no history of interpersonal difficulties with bosses or coworkers and generally described her professional relationships as "good."

(*Id.* at 537.)

Fourth, Dr. McGady provided the following summary of Plaintiff's "adapting to change" abilities (*i.e.,* "ability to respond appropriately to changes in the work setting, be aware of normal hazards, and take appropriate actions"):

> [Plaintiff] appeared to have no difficulties being aware of normal hazards and taking appropriate actions.  During the evaluation [Plaintiff] displayed no overt signs of cognitive impairment as evidenced by [her] MMSE score. [Plaintiff] appeared to demonstrate no difficulties managing the distress of the evaluation and changing from one topic to the next.

(*Id.*)

### 3.   The ALJ's Evaluation Of Dr. McGady's Opinions

As noted, the ALJ deemed Dr. McGady's opinions "not persuasive."  (*Id.* at 34.) The ALJ's full rationale was as follows:

> I find not persuasive the opinion of the consultative examiner.  The examiner opined [Plaintiff's] symptoms are adequately treated at the current time and do not appear to pose any significant impairments in her daily functioning. Furthermore, the examiner opined generally that [Plaintiff] is able to understand and remember one-to two step directions, and may have difficulties sustaining concentration, pace and persistence as the complexity

- 15 -

of tasks increases.  [Plaintiff's] report to the examiner of difficulties shopping due to anxiety around other people does not support the assessment of the examiner that [Plaintiff] experiences no significant impairments in daily functioning.  Furthermore, [Plaintiff's] varying mood and affect during appointments supports the need for restrictions in interaction.  Thus, this opinion is not consistent with the record.

(*Id.*)

### 4.    The Parties' Arguments

Plaintiff argues that the ALJ's evaluation of Dr. McGady's opinions was flawed because "the ALJ wholly ignored Dr. McGady's assessment without explanation."  (Doc. 9 at 18.)  Later, Plaintiff clarifies that the ALJ's error was "neither accept[ing] or reject[ing] Dr. McGady's opinion regarding Plaintiff's inability to understand, remember, and carry out no more than one to two-step directions."  (*Id.* at 19-20.)  Plaintiff continues: "Although the ALJ held that Dr. McGady's assessment was inconsistent with the record, the ALJ provided no reason to reject Dr. McGady's finding that [she] was limited to one or two-step instructions/directions."  (*Id.* at 20.)  Plaintiff contends this omission infected the step-five analysis, as "[t]he positions identified by the ALJ require reasoning levels that contradict [Plaintiff's] inability to understand and process more than one or two-step instructions."  (*Id.* at 21-22.)

The Commissioner responds that "[c]ontrary to Plaintiff's arguments, the ALJ articulated legally sufficient reasons, based on the regulatory factors and supported by substantial evidence of record, for finding the opinion of consultative examiner, M. David McGady, PsyD. not persuasive."  (Doc. 15 at 8-9.)  As for the consistency factor, the Commissioner argues that the ALJ permissibly "found that Dr. McGady's opinion was not consistent with the record because Plaintiff's varying mood and affect during appointments supported the need for restrictions in interaction."  (*Id.* at 9.)  As for the supportability factor, the Commissioner argues that the ALJ permissibly "found that Plaintiff's reported difficulties shopping due to anxiety around other people did not support Dr. McGady's assessment that Plaintiff experienced no significant impairments in daily functioning."  (*Id.*)  The Commissioner also argues that "[e]ven though the ALJ found Dr. McG[]ady's

opinion unpersuasive, the RFC adequately accounted for his opinion," because "[w]hen Dr. McGady stated Plaintiff could perform one-to-two step tasks that was an example of a task Plaintiff could do, not the limit of her abilities."   (*Id.* at 10-11.)   Next, the Commissioner argues that Dr. McGady's opinions were not more restrictive than those of the state agency psychological consultants.  (*Id.* at 11-12.)   Finally, the Commissioner argues that any error in failing to include a limitation to one- and two-step instructions was harmless because a person with such a limitation may still perform jobs that require Level Two Reasoning and two of the jobs identified by the VE (routing clerk and office helper) only require Level Two Reasoning.  (*Id.* at 12-13.)

In reply, Plaintiff offers no additional arguments concerning Dr. McGady.  (Doc. 16.)

### 5.   Analysis

The ALJ's evaluation of Dr. McGady's opinions was free of harmful error.  As noted, "[t]he agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings."  *Woods*, 32 F.4th at 792 (cleaned up). Although Plaintiff contends that "the ALJ wholly ignored Dr. McGady's assessment without explanation" (Doc. 9 at 18), this contention is simply untrue—the ALJ expressly considered the persuasiveness of Dr. McGady's opinions and discussed the supportability and consistency factors as part of that assessment.  (AR at 34.)

The ALJ's conclusion as to each factor was also supported by substantial evidence. Beginning with the consistency factor, the ALJ stated that Dr. McGady's opinions were "not consistent with the record" because Plaintiff's "varying mood and affect during appointments supports the need for restrictions in interaction."  (*Id.*)  Substantial evidence supports this conclusion.   In the "prognosis" portion of the examination report, Dr. McGady stated that Plaintiff's "mental symptoms are adequately treated at the current time and do not appear to pose any significant impairments in her daily functioning or ability to maintain employment."  (*Id.* at 533-34.)  Likewise, in the "social interactions" portion of

- 17 -

the assessment form, Dr. McGady did not indicate that Plaintiff had any such limitations. (*Id.* at 537.)  It was rational for the ALJ to conclude that these opinions were inconsistent with the medical records indicating that Plaintiff displayed a varying mood and affect during some appointments.  Indeed, this determination was favorable, in some respects, to Plaintiff because it suggested she was more limited with respect to social interaction than Dr. McGady had opined.

Turning to the supportability factor, the ALJ stated that Plaintiff's "report to the examiner of difficulties shopping due to anxiety around other people does not support the assessment of the examiner that the claimant experiences no significant impairments in daily functioning."  (AR at 34.)  This conclusion was supported by substantial evidence. Dr. McGady made no effort to reconcile his conclusion that Plaintiff would not experience "any significant impairments in her daily functioning" (*id.* at 534) with his observation that Plaintiff "endorsed experiencing difficulties running errands or shopping due to anxiety around other people" (*id.* at 530).  It was rational for the ALJ to find a lack of supportability under these circumstances.

Although Plaintiff's briefs are not a model of clarity on this point, Plaintiff's position appears to be that even if the ALJ properly discredited Dr. McGady's opinions regarding her "social interaction" abilities, the ALJ was separately required to provide reasons for accepting (or discrediting) Dr. McGady's opinions regarding her "understanding and memory" and "sustained concentration and persistence" abilities (which included, according to Plaintiff, the opinion that she be limited to one- to two-step instructions).  If this is Plaintiff's position, she is mistaken.  The ALJ was only required to provide reasons for why Dr. McGady's opinions were, on the whole, persuasive or unpersuasive and was not required to individually analyze all of Dr. McGady's discrete sub-opinions.  20 C.F.R. § 404.1520c(b)(1) ("[I]t is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) . . . we will articulate

how we considered the medical opinions . . . from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion . . . from one medical source individually.").  *See also Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("Austin argues that the ALJ erroneously ignored the latter part of Dr. Vowell's report in concluding that the report supported the RFC assessment.  However, the ALJ is free to accept some, but not all, of a medical opinion.  And the ALJ is not required to explicitly reconcile every conflicting shred of medical evidence.") (citing 20 C.F.R. § 404.1520c(b)(1)); *Jamie Allen W. v. O'Malley*, 2024 WL 1465924, *7 (D. Idaho 2024) ("The regulations that govern the evaluation of medical opinion evidence permit an ALJ to address multiple opinions from a single medical source in one analysis.  An ALJ need not articulate how he considers each aspect of a doctor's medical opinions on a line-by-line or opinion-by-opinion basis.") (citations omitted); *Gentry S. v. Kijakazi*, 2022 WL 1601413, *5 (N.D. Cal. 2022) ("Plaintiff argues that the ALJ failed to consider Mr. Willett's assessments in his December 2018 Mental Impairment Questionnaire.  However, . . . the ALJ is not required to identify every opinion from every source when passing judgment on the source.") (citation omitted).[7]

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk shall enter judgment accordingly and terminate this action.

Dated this 12th day of June, 2024.

Dominic W. Lanza
United States District Judge

---

[7]     This conclusion makes it unnecessary to resolve the Commissioner's alternative argument that any error was harmless because the limitations identified by Dr. McGady were consistent with jobs requiring Level Two Reasoning and two of the jobs identified by the VE only require Level Two Reasoning.